[PHILADELPHIA, MAY 8TH, 1839.]

## BUCK *against* FISHER and Another.

### IN ERROR.

1. In covenant on a ground-rent deed executed by the defendant, it was held that parol evidence was not admissible to prove that the lot formed part of a larger lot, which had been taken from the plaintiff by A.; and by an agreement made between A. and the agent of the plaintiff, the lot was subdivided, and deeds for different portions made to persons named by A.; and among others, to the defendant; with the understanding that A. was to pay the whole ground-rent.

2. The plaintiff in an action of covenant on a ground-rent deed, is entitled to interest on the arrears of ground-rent, from the several days on which the ground-rent was payable.

ERROR to the District Court for the City and County of Philadelphia.

William Fisher and Charles Ingersoll, trustees of Mrs. Mary Masters Ricketts, brought an action of covenant in that Court against Ephraim Buck, to recover the arrears of ground-rent, due by the defendant under a covenant in a deed dated the 1st day of May, 1836, and acknowledged on the 7th of July following, whereby the plaintiffs conveyed to the defendant a certain lot of ground,

(Buck *v.* Fisher.)

reserving a certain ground-rent, with the usual covenants on the part of the grantee.

The defendant pleaded *non infregit conventionem*, and payment.

On the trial before STROUD, J., on the 17th of April, 1838, the plaintiff having proved the execution of the deed, the defendant's counsel offered in evidence the deposition of one Israel E. James, taken subject to all legal exceptions, which was as follows.

" Israel E. James, a witness on the part of the defendant above-named, on his solemn oath declares and says, That a few weeks before the date of the ground-rent deed on which this suit is brought, he called on Major Ricketts to negotiate with him for a lot of ground running from Sixth to Seventh streets, above Camac street —had several interviews with him, and also with Mr. J. H. Siddal, who was the agent for Mr. Ricketts. Lot about one hundred and fifty-six feet front. I finally concluded to take the lot of Mr. Ricketts on ground-rent, I think at three dollars fifty cents per foot on Sixth street. At the time I negotiated with Mr. Ricketts I told him I should want to take the deeds in the names of several persons ; to which he assented. I afterwards saw Mr. Siddal, and found he was aware of the arrangement ; he asked me for the names of the friends to whom the deeds were to be made. Some short time elapsed before I could give him the names. He applied several times for these names, stating that Mr. Ricketts was going away, and wanted the deeds executed first. As soon as I made the arrangement, I called on Mr. Siddal and gave him the names. The names I gave were Israel E. James for thirty-two feet on the south side ; John D. Taylor, eighteen feet ; Ephraim Buck, eighteen feet ; Reuben Jarman, eighteen feet ; Osman Reed, eighteen feet ; Samuel Huggins, eighteen feet ; and Israel E. James, thirty-four feet on the north side of the lot. The deeds were made in conformity with this direction. Previous to the deeds being executed, I told Mr. Siddal the reasons why I wanted the lot divided, and the deeds made in the names of different persons. I at the same time requested him to send the bills for ground-rent as they became due to me ; that I was to pay the ground-rent. He said he would ; and as the ground-rents became due he did so. I paid no ground-rent on the lot deeded in the name of Mr. Reed. I did on Jarman's lot. I received rent from the whole lot from the tenant Michael Keenan. He was tenant before I took the lot. Mr. Siddal told me he had sent Mr. Keenan to pay the rent to me. Mr. Siddal and I had a difference about the lot. I asserting that he had not delivered me possession. I am not certain whether Mr. Siddal said *I* sent, or *we* sent Mr. Keenan to pay you the rent ; he used one or the other of the words. This was after the deeds were executed, after the

(Buck *v.* Fisher.)

1st of March subsequent to the date of the deeds. After the contract, and previous to the execution of the deeds, I stated to Mr. Siddal that the purchase was exclusively for my use. I cannot recollect the exact words used in the conversation: this was the distinct understanding between us: I mean, that it was solely for my use, and that the bills were to be presented to me for ground-rent, which I was to pay. It was stated in the conversation between Mr. Siddal and myself, that the proceeds of any sale of these lots would be my property. There was no interview between Mr. Reed and Mr. Siddal or Mr. Ricketts, on the subject of this lot, to my knowledge, till about the time of my failure, viz. the 12th of December, 1836. Mr. Siddal, after my failure, told me that if I did not pay the ground-rent, he would call on Mr. Reed for it. I did not understand from him that he had ever called on Mr. Reed therefor. It was not till after the second half-year had become due, that he spoke of calling on Mr. Reed, and after the bills therefor had been given to me. I think Mr. Siddal drew the several ground-rent deeds. I paid for them to Mr. Siddal. The trustees executed the deeds first. I was present when Mr. Reed executed the deed. The deeds had been executed by the trustees some weeks before. I paid for the acknowledgment of Mr. Reed's deed. I think I communicated to Mr. Reed before he executed the deed, the conversation with Mr. Siddal as to his name being used in the deed, but that I was only to be liable for the rent. I am not certain of this, but am strongly impressed that I did. My memory has been a good deal strained lately. I paid the taxes on the whole lot." Cross-examined. "I told Mr. Ricketts before the deeds were executed, that I wished the large lot divided into smaller lots. This was when I finally agreed to take the lot. I asked Mr. Ricketts if the deeds might not be made for the several lots, to the persons whose names I might bring to him; that I wanted the lots cut up and the deeds to go to several persons. He assented to this. I knew that Mr. Siddal was Mr. Rickett's agent, and transacted his business. He also did surveying for me. I think I first called upon Mr. Siddal for the lot. My object in calling upon Mr. Ricketts was to get the lot at a lower price. I did not act as the agent of Mr. Reed in procuring his name put in the deed. I acted for myself. I merely used his name as a friend; it was for my sole use. Mr. Siddal was not present when the deed was executed by Mr. Reed in the magistrate's office. I think it was Alderman Milnor."

The learned judge refused to allow this deposition to go to the jury; to which the defendant's counsel excepted.

The evidence having been closed, the defendant's counsel asked the Court to charge the jury, that the plaintiffs were not entitled to interest on the ground-rent for the several times at which it became

(Buck *v.* Fisher.)

payable. But the judge charged the jury that the plaintiffs were entitled to interest from the several days on which the ground-rent became payable.

A verdict having passed for the plaintiffs, the defendant took a writ of error, and filed the following specifications of error.

" 1st. That the judge erred in rejecting the evidence contained in the deposition of Israel E. James.

2nd. That the judge erred in directing the jury to allow interest on the rent claimed, from the several times it became due."

Mr. *Hopkins,* for the plaintiff in error, contended, that the testimony offered ought to have been received. The second exception was given up.

Mr. *G. M. Wharton, contra,* was stopped.

PER CURIAM.—It would be attended with an alarming degree of danger, to receive parol evidence in derogation of one of the most solemn acts known to the law. In *Miller* v. *Henderson,* (10 *Serg. & Rawle,* 290,) we were thought to have gone a great way in sanctioning the reception of parol evidence that a joint and several obligor had been drawn into the sealing of the bond by a fraudulent representation of the use to be made of it ; but there was a plausible pretext in that case to give colour to the representation, while here there is none ; for no one could suppose that the grantor had agreed to give up the security of his covenant. If he had, why did he take one ? The man who swears that he himself was the person to pay the rent, could not be sued on it. The arrangement communicated to the ground landlord was made with a stranger ; and not being a party to it, the ground landlord was not bound to express any dissent from it. Nor does it appear that the defendant was ever apprised of its having been communicated to the ground landlord, or that he considered him as being affected by it. He therefore had no case at all.

Judgment affirmed.